An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-416

Filed 15 July 2026

Wake County, No. 19CVS010860-910

WARDSON CONSTRUCTION, INC. and HOMEQUEST BUILDERS, INC., Plaintiffs,

v.

CITY OF RALEIGH, Defendant.

Appeal by Defendant from Order entered 16 September 2024 by Judge G. Bryan Collins, Jr., in Wake County Superior Court. Heard in the Court of Appeals 15 January 2026.

>*Bryson Harris Suciu & DeMay, PLLC, by James R. DeMay, Daniel K. Bryson, Martha A. Geer, and J. Hunter Bryson, for Plaintiffs-Appellees.*

>*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Robin L. Tatum; Fox Rothschild LLP, by Kip D. Nelson; and City of Raleigh, by Carolyn A. Bachl, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

The City of Raleigh (Defendant) appeals from an Order granting Summary Judgment in favor of Wardson Construction, Inc. and Homequest Builders, Inc. (Plaintiffs). The Record before us tends to reflect the following:

Defendant is a municipality organized under the laws of North Carolina. Defendant is governed by a Charter. This Charter authorizes it to

> fix and prescribe such rates and charges as will provide annually for the payment of the annual debt service requirements on existing bonded debt for such waterworks system, sewerage system and lighting system, and repairs, maintenance, enlargement, extension, and operation of any such system or systems.

Raleigh, N.C. Gen. Ordinances div. I, art. VI, § 6.32(a) (2026).

Defendant has enacted ordinances for the collection of water and sewage "capital facility fees" (CFFs). Two versions of these ordinances applied during the period at issue in this case. The First Ordinance, effective between 1 July 2013 and 29 September 2017, provided:

> In addition to all other fees, prescribed by ordinance or resolution now or hereafter in effect, there shall be a fee for connecting with the water system of the City, either within or without the corporate limits of the City, and there shall be a fee for connecting with the sewer system of the City, within or without the corporate limits of the City. The fees shall be calculated based on the water meter size for the property served by the connection. The amounts of such fees to be paid to the City at the time that application for the connection is made shall be [as set out in the CFF Schedule][.]

Raleigh, N.C., Gen. Ordinances ch. 2, art. B, div. 3, § 8-2092 (2014).

The First Ordinance was amended effective 30 September 2017 to remove reference to the water system and only address the assessment of sewer system CFFs (the Second Ordinance):

> In addition to all other fees, prescribed by ordinance or resolution now or hereafter in effect, there shall be a fee for connecting with the sewer system of the City, within or without the corporate limits of the City. The fees shall be calculated based on the water meter size for the property served by the connection. The amounts of such fees to be paid to the City at the time that application for the connection is made shall be [as set out in the Sewer CFF Schedule][.]

*Id.* (2017). Section 8-2092.1 was added to address water system CFFs:

> In addition to all other fees, prescribed by ordinance or resolution now or hereafter in effect, there shall be a fee for connecting with the water system of the City, either within or without the corporate limits of the City. The fees shall be calculated based on the water meter size for the property served by the connection. The amounts of such fees to be paid to the City at the time that application for the connection is made shall be [as set out in the Water CFF Schedule][.]

*Id.* ch. 2. art. B, div. 3, § 8-2092.1 (2017).

Defendant determines the CFF amount by using the water and sewer rate methodology set forth in the Comprehensive Guide for Raleigh Development Fees. Under the First Ordinance, the CFFs were calculated by using a combination of the "buy-in" method and the "marginal incremental approach."[1] Under the Second Ordinance, the fees were calculated entirely through the "buy-in" method. The "buy-

---

[1] Approximately 77.06 percent of the CFFs were calculated using the "buy-in" method during the First Ordinance period.

in" method establishes the amount of the fee based on "what the City has already spent[ ]" and is intended "to reimburse . . . the City[ ] [for its] previous investment in the current system."

The CFFs are paid at the time property owners apply for new water and sewer service. Property owners are also required to pay a separate "tap fee" to cover the cost of connecting the property to the water and sewer systems.[2] Defendant "is customarily able to install a water meter . . . within three days of such request." Upon meter installation, the proper owner "may actually use" Defendant's water and sewer services. After property owners connect to the system, they pay "user charges" based on their use of the water and sewer system. Defendant's ordinances state user charges should be used to pay for the costs of debt service, operation, and maintenance:

> Sec. 8-2123.1. – User Charges.
>
> A user charge shall be levied on all users including, but not limited to, persons, firms, corporations or governmental entities that discharge, cause or permit the discharge of sewage into the [publicly owned treatment works].
>
> > (1) A user charge shall reflect, at a minimum, the cost to the City of debt service, and operation and maintenance costs (including, but not limited to, replacement costs) of the POTW.

---

[2] The tap fee is not charged if the tap is installed by a licensed utility contractor. Either way, the cost of connecting is covered through this fee, whether the party pays it directly to Defendant or covers the cost by furnishing the labor themselves.

> (2) Each user shall pay its proportionate share of cost based on the volume of the user's flow.
>
> . . . .

Raleigh, N.C., Gen. Ordinances art. C, div. 3, § 8-2123.1 (2026).[3]

During the First Ordinance period, Defendant deposited the CFFs into a single account known as "Fund 310." Revenue from additional sources, such as volumetric charges for water services, meter installation fees, and tap fees, were also deposited into Fund 310. Fund 310 was used to fund various costs, "including but not limited to personnel costs, payment of outstanding debts, capital improvements, and rehabilitation projects."

During the Second Ordinance period, Defendant established two new funds: Fund 316, solely for water CFFs, and Fund 317, solely for sewer CFFs. The receipts of Fund 316 and Fund 317 were then transferred to Fund 320 and Fund 325, which were used to fund water and sewer "capital rehabilitation projects."

Plaintiffs are developers who paid CFFs to Defendant in the fiscal years 2016 through 2018 as a mandatory precondition of connecting to Defendant's existing water and sewer infrastructure. Plaintiffs initiated this class action on 12 August 2019, alleging Defendant lacked the authority to collect CFFs from the three years prior to the commencement of the action and sought recovery of all CFFs paid within

---

[3] There have been no amendments to this ordinance during the relevant period.

that time period—totaling $16,484,400.00. Additionally, Plaintiffs sought pre-judgment interest at a rate of six percent per annum from the date of each payment.

On 28 October 2019, Defendant filed a Motion to Dismiss, arguing Plaintiffs lacked standing to challenge its assessment of CFFs and, alternatively, its Charter authorized the collection of such fees. Defendant filed an Amended Motion to Dismiss asserting the same on 4 August 2020. The Amended Motion was denied on 12 April 2022.

On 25 July 2022, Defendant filed a Motion for Judgment on the Pleadings. On 23 August 2022, Defendant filed an Amended Motion for Judgment on the Pleadings, contending, among other things, the CFFs charged from 30 September 2017 through 30 June 2018 were lawful to the extent they were calculated under the "buy-in" method. That Motion was also denied.

Following class and merits discovery, Plaintiffs filed a Motion for Class Certification, and the parties filed cross-Motions for Summary Judgment. On 16 September 2024, the trial court entered an Order concluding Defendant's charging of CFFs between 12 January 2016 and 30 June 2018 (the Class Period) was ultra vires; granted Summary Judgment in favor of Plaintiffs; denied Defendant's Motion for Summary Judgment; and entered Judgment against Defendant for the refund of all CFFs charged during the Class Period, plus interest. Additionally, the trial court entered an Order granting Plaintiffs' Motion for Class Certification and certifying a

Class of all parties who paid CFFs during the Class Period.[4]  Defendant timely filed written Notice of Appeal.

## Issue

The issue on appeal is whether the trial court erred in concluding Defendant's collection of CFFs between 12 January 2016 and 30 June 2018 was ultra vires.

## Analysis

"Our standard of review of an appeal from summary judgment is de novo[.]"  *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."  N.C. Gen. Stat. § 1A-1, Rule 56(c) (2025).

"A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim."  *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted).  "If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of

---

[4] Defendant appealed the trial court's Class Certification Order to the Supreme Court of North Carolina.  That Court filed an opinion affirming the Class Certification Order on 20 March 2026.  *See Wardson Constr., Inc. v. City of Raleigh*, 398 N.C. 140, 926 S.E.2d 903 (2026).

material fact exists for trial or must provide an excuse for not doing so." *Id.* (citations omitted). "The non-moving party 'may not rest upon the mere allegations of his pleadings.' " *Id.* at 370, 289 S.E.2d at 366 (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e) (1981)).

A. *Pleading requirements*

As a threshold matter, we address Defendant's argument that Plaintiffs "failed to comply with pleading requirements[.]" Specifically, Defendants contend under N.C. Gen. Stat. § 160A-79 Plaintiffs were required to plead and prove the ordinances by which Defendants charged CFFs. *See* N.C. Gen. Stat. § 160A-79(a) (2025) ("In all civil and criminal cases a city ordinance that has been codified in a code of ordinances adopted and issued in compliance with G.S. 160A-77 must be pleaded by both section number and caption.").

We do not believe Section 160A-79 is relevant in the present action. Plaintiffs do not claim to challenge the lawfulness of the ordinance; rather, they assert Defendant was without authority to charge CFFs. Thus, it was not necessary for them to plead any specific ordinance. Therefore, we find this argument without merit. *Cf. Pitt Cnty. v. Dejavue, Inc.*, 185 N.C. App. 545, 555-56, 650 S.E.2d 12, 18-19 (2007) (plaintiff properly pleaded ordinance by section number and caption in seeking to enforce it against defendants).

B. *Assessment of CFFs*

Defendant next contends the trial court erred in concluding Defendant's assessment of CFFs was ultra vires because it has authority under its Charter to collect CFFs.

In North Carolina, cities "exist solely as political subdivisions of the State and are creatures of statute." *Davidson Cnty. v. City of High Point*, 321 N.C. 252, 257, 362 S.E.2d 553, 557 (1987). As such, cities have "no inherent powers, and can exercise only such powers as are expressly conferred by the General Assembly and such as are necessarily implied by those expressly given." *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965) (citation omitted). "All acts beyond the scope of the powers granted to a municipality are void." *City of Asheville v. Herbert*, 190 N.C. 732, 735, 130 S.E. 861, 863 (1925) (citations omitted).

The General Assembly expressly conferred the power to charge water and sewer fees upon cities in N.C. Gen. Stat. § 160A-314(a). Prior to 2017, that statute provided, in relevant part: "A city may establish and revise . . . rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise." N.C. Gen. Stat. § 160A-314(a) (2015).

Our Supreme Court interpreted this version of Section 160A-314(a) in *Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 789 S.E.2d 454 (2016) ("*QBH-I*"), *superseded by statute*, N.C. Gen. Stat. § 160A-314(a) (2017). The Court concluded the statute used language "operative in the present tense[,]" and thus, only authorized cities to charge fees "for the contemporaneous use of water and sewer services—not

to collect fees for future discretionary spending." *Id.* at 20, 789 S.E.2d at 458. Accordingly, the Court held Carthage's impact fees were not for any "contemporaneous use" because: (1) its fees were charged to properties "to be served" by the town and were "not assessed at the time of actual use[ ]" of the water and sewer system, and (2) the fees were charged alongside "tap fees" paid for the actual cost of the connection. *Id.* at 21, 789 S.E.2d at 458-59 (citation omitted). "Subsequent appeals led our Supreme Court to hold that a municipality's liability to refund unlawful impact fee revenue was subject to a three-year statute of limitations." *Kidd Constr. Grp. v. Greenville Utils. Comm'n*, 271 N.C. App. 392, 395, 845 S.E.2d 797, 799 (2020) (citing *Quality Built Homes v. Town of Carthage*, 371 N.C. 60, 74, 813 S.E.2d 218, 228-29 (2018) ("*QBH-II*")).

Following *QBH-I*, the General Assembly amended N.C. Gen. Stat. § 160A-314(a) to confer prospective charging authority upon municipalities effective 1 October 2017. *See* N.C. Gen. Stat. § 160A-314(a) (2017) (replacing "furnished" with the phrase "furnished or to be furnished"). The General Assembly also enacted HB-436, the Public Water and Sewer System Development Fee Act, N.C. Gen. Stat. § 162A-200, *et seq.*, which, subject to certain conditions, prospectively authorized cities to charge water and sewer impact fees in order "to fund costs of capital improvements necessitated by and attributable to such new development, to recoup costs of existing facilities which serve such new development, or a combination of those costs[.]" N.C. Gen. Stat. § 162A-201(9) (2017). "However, nothing in the act provides retroactive

authority for any system development fee." *Daedalus, LLC v. City of Charlotte*, 282 N.C. App. 452, 460, 872 S.E.2d 105, 112 (citation, quotation marks, and alterations omitted).

After the enactment of N.C. Gen. Stat. § 162A-200, *et seq.*, this Court decided *Kidd Construction Group, LLC v. Greenville Utilities Commission*. In *Kidd*, this Court held the city of Greenville's charter did not authorize it to charge impact fees. The language of Greenville's charter provided:

> The Greenville Utilities Commission shall have entire supervision and control of the management, operation, maintenance, improvement, and extension of the public utilities of the City, which public utilities shall include electric, natural gas, water, and sewer services, and shall fix uniform rates for all *services rendered*[.] . . .

*Kidd*, 271 N.C. App. at 398, 845 S.E.2d at 801 (emphasis in original). This Court noted the language of the charter was "nearly identical" to the statutory language at issue in *QBH-I*. *Id.* The Court further noted Greenville's charter failed to "confer prospective charging authority" on the City because it was "lacking the critical 'to be' language." *Id.* at 399, 845 S.E.2d at 801 (citing *QBH-I*, 369 N.C. at 20-21, 789 S.E.2d at 458).

In the instant case, Defendant's Charter authorizes it to

> fix and prescribe such rates and charges as will provide annually for the payment of the annual debt service requirements on existing bonded debt for such waterworks system, sewerage system and lighting system, and repairs, maintenance, enlargement, extension, and operation of any such system or systems.

Raleigh, N.C. Gen. Ordinances div. I, art. VI, § 6.32(a) (2026).

Defendant argues its Charter is not like Greenville's because it authorizes Defendant to " 'fix and prescribe rates and charges' to pay for the 'enlargement' and 'expansion' of its water and sewer systems; Greenville cannot." But Greenville's charter authorized it to "have entire supervision and control of the . . . operation, . . . *improvement, and extension* of the public utilities of the City, . . . and *shall fix uniform rates* for all services rendered[.]" *Kidd*, 271 N.C. App. at 393, 845 S.E.2d at 798 (emphasis added). We can find no meaningful distinction between the language of Defendant's and Greenville's charters. Both charters authorize the respective municipalities to fix rates for water and sewage services, such that they cover the costs of operation and extension of the system but lack any language conferring prospective charging authority.

Defendant argues "a charter need not have any magic words to effectuate its intent." While this may be true, there is simply no language in the Charter which grants Defendant prospective charging power. In fact, in each of the cases to which Defendant attempts to liken the present case, the municipalities were governed by statutes or ordinances which expressly granted authority to charge for services "to be furnished." *See McNeill v. Harnett Cnty.*, 327 N.C. 552, 398 S.E.2d 475 (1990) (enabling statute contained prospective, "to be furnished" language); *Anderson Creek Partners, L.P. v. Cnty. of Harnett*, 275 N.C. App. 423, 854 S.E.2d 1 (2020) (same),

*rev'd on other grounds*, 382 N.C. 1, 876 S.E.2d 476 (2022); *JVC Enterprises, LLC v. City of Concord*, 376 N.C. 782, 855 S.E.2d 158 (2021) (same).[5] That is not the case here. Accordingly, because the Charter lacks any language granting prospective charging authority, we conclude Defendant is not authorized by its Charter to charge for future services.

Defendant further argues, even if we determine the Charter does not grant it prospective charging power, its CFFs were not, in fact, charged for future services and, thus, Plaintiffs are not entitled to return of said fees. Defendant asserts "the First Ordinance and Second Ordinance established fees for 'connecting' to the water and sewer systems. Nothing in the text suggests that the fees were for future use." However, the Record is clear Defendant charged separate tap fees to cover the cost of connecting to the water and sewer system. *See Daedalus*, 282 N.C. App. at 462, 872 S.E.2d at 112-13 (noting capacity fees could not have been "used to pay for the actual cost of tapping into the system, as a separate tap fee covers that cost."). Indeed, it is notable that in each challenged instance where a municipality charged an impact fee in addition to a tap fee, we have held charging the impact fee was ultra vires. *See, e.g.*, *QBH-I*, 369 N.C. at 21, 789 S.E.2d at 459; *Daedalus*, 282 N.C. App. at 462, 872 S.E.2d at 112-13; *Kidd*, 271 N.C. App. at 395, 845 S.E.2d at 799.

---

[5] Defendant also likens this case to *Adams Homes AEC, LLC v. Stanly County*, 299 N.C. App. 1, 918 S.E.2d 214 (2025). However, whether Stanly County impermissibly charged prospective fees was not an issue in that case. Rather, the plaintiffs argued they were not "new developments" as set out in the relevant Stanly County ordinance. *Id.* at 3, 918 S.E.2d at 215.

Importantly, Defendant has not produced any specific evidence (1) the fees originated from contemporaneous use or (2) were used to cover services already furnished—a showing of either of which might create a genuine issue of material fact for trial. *Daedalus*, 282 N.C. App. at 461-62, 872 S.E.2d at 112-13; *see also Lowe*, 305 N.C. at 369-70, 289 S.E.2d at 366 ("If the moving party satisfies its burden of proof, then the burden shifts to the non-moving party to 'set forth *specific facts* showing that there is a genuine issue for trial.' " (emphasis in original) (quoting N.C. R. Civ. P. Rule 56(e))). To be sure, the Record shows Defendant's CFFs were collected "*before* official water and sewer service was available," and water and sewer service would not begin until the meter was installed and volumetric billing began. *True Homes, LLC v. City of Greensboro*, 292 N.C. App. 361, 366, 898 S.E.2d 52, 56 (2024) (emphasis in original) (affirming grant of summary judgment in favor of developers challenging Greensboro's assessment of impact fees).

Defendant adduced evidence the CFFs were calculated to cover contemporaneous costs and deposited into funds from which at least some of the receipts were then expended on water and sewer system operating costs: Stephen Balmer, the fiscal manager for Raleigh Department of Public Utilities, averred the fees were calculated pursuant to the "buy-in" method, under which new users reimburse Defendant "for its previous investment in the current system infrastructure." In other words, the CFFs were calculated to pay for existing systems.

While Defendant contends no other case has had such evidence, we disagree. As we discussed in *Daedalus*, the City of Charlotte also calculated its fees using the "buy-in" method:

> The Revenue Manual also instructs [Charlotte] to calculate the fees using the 'buy-in' method. The 'buy-in' method establishes the amount of the fee based on 'the unit cost of capacity of the water and sewer system in a way that results in the cost of capacity being equal to that which existing customers of the system have paid.

282 N.C. App. at 453-54, 872 S.E.2d at 107-08.

In *Daedalus*, this Court held Charlotte's charging of "capacity fees" was ultra vires because "the capacity fees were not used to pay for the actual cost of tapping into the system" and were "merely deposited into [Charlotte's] general water and sewer fund and 'carrie[d] forward over time' to 'fund future operations.' " *Id.* at 462, 872 S.E.2d at 113. We also noted Charlotte could not "identify any contemporaneous use of the water and sewer system property owners receive for the payment of the fees[.]" *Id.* at 462, 872 S.E.2d at 112-13.

Here, as in *Daedalus*, the evidence is uncontradicted Defendant charged CFFs prior to and as a condition of the issuance of building permits and receiving service—separate from the standard "tap" fee. *See also Kidd*, 271 N.C. App. at 395, 845 S.E.2d at 799 (unlawful fees were imposed as a precondition to development approval, to the issuance of building permits, and to receiving water and sewer service). Like the City of Charlotte, Defendant has not identified any contemporaneous use of the water and

sewer system property owners receive at the time they pay the CFFs. *See Daedalus*, 282 N.C. App. at 461, 872 S.E.2d at 112; *Kidd*, 271 N.C. App. at 401, 845 S.E.2d at 802.

Defendant argues "all of the evidence in the record is that the fees charged by [Defendant] were not 'impact fees' for services 'to be furnished' in the future[ ]" and contend "[e]ven if [Plaintiffs] had presented evidence to the contrary, that would not have been a basis to grant them summary judgment." Defendant also asserts in its opening and reply briefs that Plaintiffs have not "rebutted" or "controverted" Defendant's evidence. In so arguing, Defendant likens this case to *Zander v. Orange County, NC*, 289 N.C. App. 591, 890 S.E.2d 793 (2023), *rev'd for reasons stated in the dissent*, 386 N.C. 951, 910 S.E.2d 346 (2024).

The facts of *Zander* surround a statute which authorized Orange County to assess impact fees to offset the costs of "constructing certain capital improvements[.]" *Id.* at 593, 890 S.E.2d at 795 (citation and quotation marks omitted). The enabling statute established "minimum procedures" the county was required to follow in calculating those fees. *Id.* at 593, 890 S.E.2d at 796 (citation omitted). The plaintiffs sued the county, arguing, among other things, the county had failed to comply with the statute's fee-setting provisions and the fees were thus ultra vires. *Id.* at 597, 890 S.E.2d at 798. The trial court granted summary judgment for the county, *id.*, and this Court affirmed in part and reversed in part, *id.* at 612, 890 S.E.2d at 807. The dissenting Court of Appeals judge would have reversed the trial court's order and

remanded the case for further proceedings before a jury because he believed there were genuine issues of material fact surrounding how the fees were calculated and whether the calculations were done in accordance with the requirements set out under the statute. *See id.* at 613-28, 890 S.E.2d at 808-17 (Stading, J., dissenting). Our Supreme Court agreed and reversed the trial court's grant of summary judgment for the reasons stated in the dissent. 386 N.C. at 951, 910 S.E.2d at 346.

Thus, how the impact fees were calculated was relevant in *Zander* because it was prescribed by statute and formed the basis for the plaintiffs' challenge. However, in the instant case, our analysis concerns the source of the CFFs, not the calculation. *Kidd*, 271 N.C. App. at 401, 845 S.E.2d at 802 (explaining even if Greenville's charter authorized it to pay out its receipts for future improvements and expansions, "that does not change the limited sources through which those receipts can originate— contemporaneous use."). Thus, *Zander* is not directly applicable to the case at bar.[6]

Moreover, for the sake of clarity, we feel compelled to iterate that, in the trial court, Plaintiffs were required to show there was no genuine issue of material fact for trial.[7] *Lowe*, 305 N.C. at 369, 289 S.E.2d at 366 (citations omitted). In this case,

---

[6] To be clear, calculation of the fees at issue in the present case is also governed by statute. *See* N.C. Gen. Stat. § 162A-205 (2025). However, how Defendant's CFFs were calculated does not form any part of Plaintiffs' Complaint and is, as we have explained, not relevant to the analysis at bar.

[7] Our review of the trial court's Order is limited to its grant of Plaintiffs' Motion for Summary Judgment—not its denial of Defendant's Motion for Summary Judgment, as "[t]he denial of a motion for summary judgment is an interlocutory order and is not appealable." *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Therefore, in the present analysis, Plaintiffs are the moving party and Defendant is the non-moving party.

Plaintiffs did so: producing evidence the fees were not charged for contemporaneous services. As a result, the burden shifted to Defendant to show there was a genuine question of material fact for trial. *Id.* (citations omitted). In other words, Defendant was required to forecast evidence tending to show its CFFs originated from contemporaneous use. *See Kidd*, 271 N.C. App. at 401, 845 S.E.2d at 802. Here, Defendant was unable to make such a forecast.

Thus, the undisputed evidence of record shows Defendant's CFFs were not charged for contemporaneous use of the water and/or sewer system. Therefore, because Defendant's Charter does not authorize it to charge for services to be furnished, the trial court did not err in concluding Defendant's actions were ultra vires. Consequently, in light of controlling authority, the trial court properly granted Plaintiffs' Motion for Summary Judgment.

### **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Order.

AFFIRMED.

Chief Judge DILLON and Judge MURRY concur.

Report per Rule 30(e).